**FIFTH DIVISION**
**MCFADDEN, P. J.**
**BROWN AND MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 22, 2024**

# In the Court of Appeals of Georgia

A23A1528. WILLIAMS v. KASULKA PROPERTIES, LP et al.

MCFADDEN, Presiding Judge.

Damario Williams alleges that he was seriously injured in a physical altercation with a security guard at a nightclub. He brought an action for damages against various defendants. This appeal is from a grant of summary judgment to three of those defendants. Summary judgment was granted to Kasulka Properties, LP, the club's landlord, on the basis that it was an out-of-possession landlord and consequently that the claim against it is barred under OCGA § 44-7-14. Summary judgment was granted to Eberhardt & Barry Property Management, LLC and Eberhardt & Barry, Inc., two associated entities that performed various property management functions for the

landlord, on the basis that they had violated no duty that they owed to Williams. Finding no error with either of these conclusions, we affirm.

1. *Facts*

"On appeal from the grant or denial of a motion for summary judgment, we construe the evidence in the light most favorable to the nonmoving party." *First Communities Mgmt. v. Holmes*, 353 Ga. App. 409 (1) (837 SE2d 717) (2020).

So viewed, the evidence shows that Kasulka Properties owns the property at issue. Since 2010, Kasulka Properties has worked with the Eberhardt defendants to lease the property to tenants. Eberhardt & Barry Inc. found tenants for the property and, once the property was leased, Eberhardt & Barry Property Management performed property management services such as collecting rent and paying the landlord's bills in connection with the property.

On November 5, 2018, Kasulka Properties and Club Xavier, Inc. entered into a commercial lease for the property, commencing on that date and ending on November 31, 2021. The lease provided that Kasulka Properties was "not . . . required to make any repairs or improvements to the premises" and that the club, "at [its] sole cost and expense," was responsible for repairing and maintaining the premises. It

required the club to maintain specified amounts of insurance, including liability insurance, naming Kasulka Properties and the Eberhardt defendants as additional insureds. And it stated: "Lessee [Club Xavier] shall provide a copy of such insurance to Lessor [Kasulka Properties] prior to the commencement of the term of this Lease." Although there is undisputed deposition testimony that the club had the required liability insurance at the time and had informed the Eberhardt defendants of that fact, the club did not actually provide Kasulka Properties or the Eberhardt defendants with a copy of its insurance policy.

On August 2, 2019, Club Xavier opened for business on the leased premises. Its owner, Xzavier Gilmore, hired Mike Kendrick to work as a security guard at the club. Neither Kasulka Properties nor the Eberdardt defendants had any role in hiring or training Kendrick or in any other decision Gilmore made in running the business.

On February 16, 2020, Kendrick got into a physical altercation inside the club with a patron, the appellant Damario Williams, during which Kendrick threw Williams to the ground, seriously injuring him. The club did not have liability insurance when this incident occurred.

Williams brought claims against Kasulka Properties and the Eberhardt defendants. He asserted that Kasulka Properties and the Eberhardt defendants were negligent in various ways that pertained to the safety of the premises: by failing to warn business patrons about the risk of criminal activity at the premises; by hiring and retaining an "unsafe employee," Kendrick; by failing to "train [their] employees to implement proper security measures"; and by "failing to properly vet potential tenants[.]"

2. *Landlord Kasulka Properties*

The trial court granted summary judgment to Kasulka Properties, holding among other things that Kasulka Properties was an out-of-possession landlord and, therefore, was not liable under OCGA § 44-7-14. We agree.

(a) *Liability of out-of-possession landlords*

"[W]hen [a] landowner cedes possession of the property to a tenant, the landowner's control over the property and the concomitant ability to make the property safe becomes limited. . . . For this reason, Georgia law has long excepted landlords from general landowner liability with respect to premises possessed by

4

tenants. . . ." *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 175 (2) (a) (856 SE2d 267) (2021) (citation and punctuation omitted).

This exception is codified in OCGA § 44-7-14, which governs the tort liability of out-of-possession landlords. See *Martin v. Johnson-Lemon*, 271 Ga. 120, 122 (1) (516 SE2d 66) (1999) (an out-of-possession landlord "is subject to tort liability only under the provisions of OCGA § 44-7-14"). OCGA § 44-7-14 and OCGA § 51-3-1 (the Code section governing premises liability) are mutually exclusive sources of liability. See *Cham*, 311 Ga. at 177 (2) (b); *Plott v. Cloer*, 219 Ga. App. 130, 131 (1) (464 SE2d 39) (1995). Indeed, it is error to analyze an out-of-possession landlord's liability using the principles of premises liability set forth in OCGA § 51-3-1. See *Martin*, 271 Ga. at 123 (1).

Under OCGA § 44-7-14, a landlord that has "fully parted with possession and the right of possession [of premises] is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant[,]" except for "damages arising from defective construction or . . . damages arising from the failure to keep the premises in repair." The Code section "expressly limits the potential liability of out-of-possession landlords to these two sets of circumstances." *Pajaro v.*

*South Ga. Bank*, 339 Ga. App. 334, 336 (793 SE2d 209) (2016). Consequently, an out-of-possession landlord cannot be held liable for damages for a criminal assault on the leased premises, unless the assault was due to negligent construction or maintenance of the premises. See *Savannah State Univ. Foundation v. Lewis*, ___ Ga. App. ___, ___ (1) (895 SE2d 551) (Case No. A23A1199, decided Nov. 17, 2023); *Starks v. USG Real Estate Foundation III*, 361 Ga. App. 406, 411-412 (1) (864 SE2d 621) (2021); *Lake v. APH Enterprises*, 306 Ga. App. 317, 319-320 (702 SE2d 654) (2010); *Godwin v. Olshan*, 161 Ga. App. 35, 36 (2) (288 SE2d 850) (1982) (construing predecessor to OCGA § 44-7-14).

(b) *Status of Kasulka Properties*

The parties dispute whether Kasulka Properties is an out-of-possession landlord entitled to OCGA § 44-7-14's limited liability. This question turns on whether there is evidence of "such dominion and control of the premises [by the landlord] so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1," which covers premises liability generally. *Cowart v. Schevitz*, 335 Ga. App. 715, 716 (782 SE2d 816) (2016) (citation and punctuation omitted). See *Cham*, 311 Ga. at 179 (2) (b) n. 11 (if a landlord remains "in

6

control of the rented premises . . . along with his tenants," then OCGA § 44-7-14 may not apply) (punctuation omitted); *Fontaine v. The Home Depot*, 250 Ga. App. 123, 127 (2) (550 SE2d 691) (2001) (a party "can be liable under principles of premises liability only if it had control of the premises"); *Davis v. Stone Mountain Mem. Assn.*, 179 Ga. App. 486, 487 (1) (347 SE2d 317) (1986) ("where the landowner is sought to be held liable for activities of a third person on the property with permission[,] . . . [l]iability depends upon control, rather than ownership, of the [leased] premises") (citation and punctuation omitted).

A landlord may retain some rights in a leased premises and still have fully surrendered possession to the tenant, so as to be an out-of-possession landlord with limited liability under OCGA § 44-7-14. See *Ranwez v. Roberts*, 268 Ga. App. 80, 82 (1) (601 SE2d 449) (2004). For example, we have held that landlords were not in possession of premises despite having the right to enter the premises in an emergency, to inspect the premises for landlord-related purposes, to approve tenants' construction of improvements to the premises, or to approve tenant insurance policies. See *Boone v. Udoto*, 323 Ga. App. 482, 487 (3) (747 SE2d 76) (2013); *Cowart*

*v. Crown American Properties*, 258 Ga. App. 21, 24 (3) (572 SE2d 706) (2002); *Godwin*, 161 Ga. App. at 36 (2) (construing predecessor to OCGA § 44-7-14).

Here, there is no evidence that Kasulka Properties retained dominion or control over the premises to keep it from being an out-of-possession landlord under OCGA § 44-7-14. At the time in question, Kasulka Properties had leased the premises to Club Xavier, which was using the premises for a nightclub. Under the terms of that lease, Club Xavier was responsible for the premises, and Kasulka Properties had no obligation to repair or maintain it. See *Barclay v. Stephenson*, 337 Ga. App. 365, 369 (2) (a) (787 SE2d 322) (2016) (OCGA § 44-7-14 governs a non-resident landlord's liability where the tenants were responsible for the premises); *Boone*, 323 Ga. App. at 487 (3) (finding no evidence of "such dominion and control of the premises so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14" where the landlord "had no obligation to repair or maintain" the property) (citation and punctuation omitted). And after entering into the lease, Kasulka Properties allowed Club Xavier to exercise exclusive control over the premises, including manner in which the business was run.

Nevertheless, Williams argues that Kasulka Properties retained the right to possess the premises because its lease with Club Xavier never went into effect. This is, Williams asserts, because the term of the lease requiring Club Xavier to "provide a copy of such insurance to Lessor prior to the commencement of the term of this Lease" was a condition precedent that Club Xavier failed to meet. See OCGA § 13-3-4 ("A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party.") This argument fails for several reasons.

First, the term is not a condition precedent. "[C]onditions precedent are not favored in interpreting contracts," and they generally are indicated by "words [of condition] such as 'on condition that,' 'if,' and 'provided,' [or by] express statements to the effect that a condition is to be construed as a condition precedent. . . ." *Gen. Steel v. Delta Bldg. Systems*, 297 Ga. App. 136, 139 (1) (676 SE2d 451) (2009) (citations and punctuation omitted). No such language or statement exists here.

Moreover, the parties to the lease were free to modify that term through their conduct. See *Glimcher Properties v. Bi-Lo*, 271 Ga. App. 322, 324 (1) (609 SE2d 707) (2005). Even if we construe the term as a condition precedent that Club Xavier failed to meet, thereby relieving Kasulka Properties of its obligations under the lease, see

9

OCGA § 13-3-4, Kasulka Properties nevertheless performed those obligations — it permitted Club Xavier to take possession of the premises and open the nightclub.

Finally, even if the written lease did not go into effect on account of a condition precedent, a landlord-tenant relationship still existed between Kasulka Properties and Club Xavier. "The relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor." OCGA § 44-7-1 (a). As stated above, there is no dispute that Club Xavier actually possessed the premises, with Kasulka Properties' consent. Such "actual possession establishes [Club Xavier's] acceptance of possession, while [Kasulka Properties'] consent establishes that the right to that possession was in fact granted." *Efficiency Lodge v. Neason*, 316 Ga. 551, 559 (2) (b) (889 SE2d 789) (2023). So Kasulka Properties was still an out-of-possession landlord, and OCGA § 44-7-14 still applies. See *Lake*, 306 Ga. App. at 319 (the existence of a written lease does not control the issue of a landlord's liability under OCGA § 44-7-14).

In summary, Williams seeks to impose liability upon Kasulka Properties on the ground that Kasulka Properties failed in various ways to keep the leased premises safe,

which is a theory of premises liability under OCGA § 51-3-1. But "[a] landlord's duty under OCGA § 51-3-1 to keep safe portions of the leased premises . . . does not extend to the leased area of the premises over which the tenant has exclusive possession and control." *Stephens v. Clairmont Center*, 230 Ga. App. 793, 794-795 (2) (498 SE2d 307) (1998) (citations and punctuation omitted). Because Kasulka Properties was an out-of-possession landlord, OCGA § 44-7-14 expressly limits its liability to claims for "damages arising from defective construction or for damages arising from the failure to keep the premises in repair." See *Bennett v. McPhatter*, 359 Ga. App. 804, 807 (a) (860 SE2d 105) (2021). And because Williams's claims do not fall within those categories, the trial court correctly granted summary judgment to Kasulka Properties. See *Pajaro*, 339 Ga. App. at 338 (3).

3. *Property management companies Eberhardt & Barry Property Management, LLC and Eberhardt & Barry, Inc.*

The trial court granted summary judgment to the Eberhardt defendants on the ground that they had no legal duty to Williams. We agree.

"Negligence is premised on, among other things, a duty owed by the defendant to the plaintiff." *Dept. of Labor v. McConnell*, 305 Ga. 812, 815 (3) (a) (828 SE2d 352)

11

(2019). "[T]he plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i. e., an action, or failed to do something that it should have done, i. e., and omission, pursuant to the duty owed the plaintiff under the law." *Rasnick v. Krishna Hospitality*, 289 Ga. 565, 566 (713 SE2d 835) (2011).

The existence of a duty is a question of law. *Sheaffer v. Marriott Intl.*, 349 Ga. App. 338, 340 (1) (826 SE2d 185) (2019). There is no "general legal duty to all the world not to subject others to an unreasonable risk of harm. Instead, a legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts." *Hare Krishna Roswell Hotel v. Corsino*, 369 Ga. App. 166, 169 (1) (892 SE2d 785) (2023) (citations and punctuation omitted). As sources of the duty that Williams contends the Eberhardt defendants owed him, Williams points to principles of premises liability (codified at OCGA § 51-3-1) and principles of an agent's individual liability for tortious acts done in the performance of the agency agreement (codified at OCGA § 10-6-85). We are not persuaded.

By its terms, OCGA § 51-3-1 applies only to "owner[s] or occupier[s] of land[.]" See *Ga. Power Co. v. Triola*, 364 Ga. App. 60, 62 (873 SE2d 737) (2022) ("owner/occupier status is a necessary element of any premises-liability claim"). There is no evidence that the Eberhardt defendants were either an owner or an occupier of the premises. Their property management responsibilities did not extend to the exercise of "any degree of control or possession that would make [them] an occupier of th[e] premises." Id. For example, they did not "manage[ ] the daily operations of the [club,]" or have "the right to admit or exclude customers[,]" or "maintain[ ] and repair[ ] the premises[.]" *Fontaine*, 250 Ga. App. at 127 (2). To the contrary, the undisputed evidence shows that the Eberhardt defendants had no involvement whatsoever in the running of Club Xavier's business. Like the defendant in *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744 (2) (470 SE2d 270) (1996), the Eberhardt defendants were "merely [third parties] which agreed to provide certain . . . services" in connection with the leased premises, but which had no duty as an owner or occupier under OCGA § 51-3-1.

Williams also argues that the Eberhardt defendants owed him a duty of care in undertaking their responsibilities under their agency agreement with Kasulka

Properties. An agent may be individually liable "for his own tortious act, whether acting by command of his principal or not," OCGA § 10-6-85, and Williams cites the rule that an agent may be liable to third persons for misfeasance or malfeasance in the performance of its contract with its principal. See *Owens v. Nichols*, 139 Ga. 475, 477 (1) (77 SE 635) (1913); *Reed v. Arrington-Blount Ford*, 148 Ga. App. 595, 597 (2) (252 SE2d 13) (1979); *Coffer v. Bradshaw*, 46 Ga. App. 143, 147 (167 SE 119) (1932).

But an agent's tort liability to a third party must still be "predicated upon breach of a duty owed by the agent to the injured party." *Reed*, 148 Ga. App. at 597 (2). A duty is not imposed upon the agent "by virtue of his relation [with the principal], but . . . is imposed upon him by law as a responsible individual in common with other members of society." *Coffer*, 46 Ga. App. at 147 (citation and punctuation omitted). In other words, neither OCGA § 10-6-85 nor the rule cited by Williams provides a source for a legal duty. Instead, these authorities merely permit the Eberhardt defendants to be held liable if, in the course of their agency, they breached a duty.

As stated above, the Eberhardt defendants had no legal duty to keep the premises safe under OCGA § 51-3-1. And Williams has not shown any other grounds

14

upon which to impose such a duty upon them. So the trial court did not err in granting summary judgment to the Eberhardt defendants.

*Judgment affirmed. Brown and Markle, JJ., concur.*